Longwoeth, J.
The city of Ironton, by its council, resolved to extend its system of water-works by .laying additional pipes in several streets, among which was Chestnut street, and appropriated $16,336 from the sale of bonds, to pay for the same.
The trustees of water-works ordered the extension to be made, and advertised for proposals to furnish the pipe necessary for the extension, and accepted the bid of Dennis Long & Co., of Louisville. Before, however, any written contract was executed, a dispute arose between the trustees and the finance committee of the council respecting the disbursement of the fund so appropriated — the former insisting that it should be under their sole control, while the latter claimed the right to audit all bills for work done and materials furnished.
The trustees were unwilling to go on with the work, under these conditions, and immediately notified Long & Co. that they would not receive or pay for any pipe furnished by them, and refused to have anything to do with the proposed extension. They notified King, their superintendent, to this effect, although it does not appear that any formal, official action was taken by them ; at least no record of such action is found in the‘bill of exceptions.
Certain members of council, being desirous that the work should be done, urged the contractors to send on the pipe, and assured them that payment would be made therefor. The pipe was sent, and subsequently paid for, in some manner not apparent from the evidence. They also persuaded King to go on with the work, and the pipe was laid accordingly. The trustees did not discharge King, or even order him' to stop the work, although they individually notified him that he was doing a thing which he had no right to do, and cautioned him that he was acting upon his own responsibility. ¥e do not think that it appears from the evidence that the trustees, at any time, really objected to the *52 work being done; but that they simply refused to have anything to do with it themselves, or to be in any way responsible therefor.
The evidence tends to show that on the night of November 16th, 1875, the ditch on Chestnut street at its intersection with Third street, which had been dug that day, was carelessly left open at the crossing, without any protection or guard, and without light or precaution used to warn passers-by of the danger; and that plaintiff, Mrs. Kelley, on the night in question, while walking up Third street, without any fault on her part, fell into the ditch, and sustained serious injury.
To recover damages for this injury suit was brought in the court of common pleas and verdict and judgment rendered in plaintiff’s favor, which judgment was subsequently affirmed in the district court.
It is argued on behalf of plaintiff in this court that, upon this state of facts, no recovery could be had against the city, for the reason that the negligent act which caused the injury was not in any sense the act of the city or of its agents. It is insisted that King, acting without orders from the trustees, upon his own responsibility, under the direction of certain members of the council, in their individual capacity, was simply a wrongdoer, and that neither he nor those under whom he acted could render the city responsible for their tortious doings.
We do not think this position tenable. Conceding, for the sake of argument, all that is claimed by plaintiif in error upon this point, it is manifest that the wrongful act which caused the injury was not the digging the ditch, but leavmg it unggroteoted• It is clearly the duty of a municipal corporation, having the control of its streets, to keep them in a condition safe for the passage of vehicles and foot-passengers, using ordinary care, at all times during the night as well as the day. This responsibility cannot be avoided by showing that the danger was caused, not by the acts of the city’s authorized agents, but by mere trespassers or wrong-doers. We concede, where the ground of action is the neglect of the corporation to put the streets in repair, or to remove obstructions therefrom, or to remedy causes of danger occasioned by the wrongful acts *53 of others, notice of the condition of the street, or what is equivalent to notice, is necessary, to give to the person injured a right of action against the corporation (See 2 Dillon, § 789). But in the case before us, the work was done by a city officer whose duty, as such, it was to superintend the digging of all ditches for water-pipe, and who did not cease to be such public officer from the mere fact (if fact it be), that in this instance he was acting without authority. The ditch having been dug, it then immediately became his duty to see that proper precautions against .danger should be taken. More than this, the work was done with the full Tmowledge, if not with the consent, of -the trustees, who saw the work progressing; and under the direct order and supervision of members of council. What other or more complete notice could be given to the city it is difficult to determine.
However this may be, we are by no means prepared to say that the work was performed without authority. The council had provided by ordinance, and the trustees by resolution, that this very work should be done, and this action had not been reconsidered, or rescinded. The trustees simply refused to carry it out. They sought to shield themselves from responsibility by doing nothing. They did not, at any time, seek to prevent the work, although they had full knowledge of its progress under the charge and superintendence of their own servant and officer. We do not think it fair to say, under these circumstances, that the act of Ring was wholly unauthorized.
Numerous exceptions were taken at the trial to the action of the court in refusing special charges, and to the charges given, which we do not consider it necessary to review in detail. They are all covered by what we have already said; and whatever error may exist in any of them, was to the prejudice of the plaintiff below and not of the defendant.

Judgment affirmed.